**Robert SCHIAZZA, Diane Schiazza, and Delaware Valley PCS Communications, LLC., Plaintiffs,**

v.

**ZONING HEARING BOARD OF FAIR-VIEW TOWNSHIP, YORK COUNTY, PENNSYLVANIA, Defendant.**

No. 1:CV–01–0401.

United States District Court, M.D. Pennsylvania.

Oct. 18, 2001.

Michael D. Reed, Bryan S. Megary, Mette, Evans & Woodside, Harrisburg, PA, for plaintiffs.

Robert G. Hanna, Jr., Marshall, Dennehey, Warner, Coleman & Goggin, Harrisburg, PA, for defendant.

### MEMORANDUM

RAMBO, District Judge.

Before the court are the parties' cross-motions for summary judgment. The parties have briefed the issues, and the motions are ripe for disposition.

### I. *Background*

This case involves a decision by Defendant Zoning Hearing Board of Fairview Township (the "Zoning Board") denying Plaintiffs' application for approval to erect a wireless communications tower. The following facts are undisputed unless otherwise indicated: Plaintiff Delaware Valley PCS Communications, LLC ("Delaware Valley") is a Delaware limited liability company registered to do business in the Commonwealth of Pennsylvania. Delaware Valley is licensed by the Federal Communications Commission ("FCC") to provide wireless communications service.

Plaintiffs Robert and Diane Schiazza ("Schiazzas") own a 9.4 acre tract of land located at 521 Locust Road in Fairview Township, York County, Pennsylvania. The property in question is located in the Commercial Highway District as designated by the Fairview Township Zoning Ordinance ("Zoning Ordinance"). The Schiazzas entered into a license agreement with Delaware Valley granting the telecommunications company permission to construct a 150 foot tall wireless communication tower on their property. Additionally, Delaware Valley agreed to obtain the necessary zoning approvals. The Schiazzas currently operate a roller skating rink on their property.

According to Plaintiffs, under FCC regulations Delaware Valley is required to provide wireless communications telephone service to its customers. Plaintiffs contend that the proposed tower, therefore, is necessary for Delaware Valley to comply with its FCC license. Defendant, however, contends that the proposed tower is not necessary because Plaintiffs have an application pending on the adjacent property at 520 Locust Road.

On November 21, 2000, Plaintiffs filed an application with the Zoning Board seeking: (1) a special exception, pursuant to § 902.3 of the Zoning Ordinance for the erection of a telecommunications signal facility; (2) a principal use variance, pursuant to § 2001 of the Zoning Ordinance, for the purpose of permitting an additional

principal use; and (3) several parking variances. Plaintiffs contend that they also sought, in the alternative, a subdivision. Defendant denies that Plaintiffs ever applied for a subdivision. It is undisputed, however, that Plaintiffs argued that subdivision would be awkward or undesirable as a grounds for its entitlement to the principal use variance.

The Zoning Board held a public hearing on December 21, 2000. At the hearing, Delaware Valley presented evidence that it met the general criteria for the special exception for erection of a telecommunications signal facility. W. Lee Woodmansee, a site consultant for Delaware Valley, testified that he previously submitted an application to Verizon Wireless ("Verizon") to co-locate Delaware Valley's wireless communications antenna on Verizon's already existing tower. That tower is located within one-quarter (¼) of a mile from Plaintiffs' proposed tower site. In a letter dated November 20, 2000, Verizon denied Plaintiffs' application. Verizon stated that due to a recent transaction with ALLTEL Communications Corporation, Verizon would be unable to authorize the co-location request "at the present time." (Ex. 9.)

Atta Tahmas, a radio frequency expert, also testified at the Zoning Board's hearing. According to Plaintiffs, Tahmas testified that even if Delaware Valley would have been allowed to co-locate on Verizon's tower, there would still be a gap of one-half (½) to three-quarters (¾) of a mile in Delaware Valley's service because the maximum height at which Delaware Valley would be permitted to locate its antenna on the Verizon tower is 110 feet. Furthermore, Plaintiffs' proposed 150 foot tower would close the gap.

In a decision dated February 1, 2001, the Zoning Board denied Plaintiffs' application. In its decision, the Zoning Board cited two primary reasons for its denial. First, Plaintiffs failed to demonstrate their need for a variance from the regulation allowing only one principal use per lot. Second, even if Plaintiffs qualified for the variance, Plaintiffs did not demonstrate that they were entitled to the special exception to the Zoning Ordinance for telecommunications towers.

Under its first reason, the Zoning Board concluded that, according to the Zoning Ordinance, a telecommunications tower is a principal land use. The Schiazzas already had a principal use of their land—a roller skating rink. Under the Zoning Ordinance, no property is entitled to more than one principal use per lot. The Zoning Board may grant variances from this limitation, but only when the applicant demonstrates that the variance is necessary to enable reasonable use of the of the property because there is no possibility that the property can be developed in strict conformity with the Zoning Ordinance. The Zoning Board concluded that Plaintiffs' argument that subdivision would be awkward or undesirable was not sufficient to satisfy its required showing for a variance.

As to its second reason, the Zoning Board held that Plaintiffs' failed to make the required good faith effort to co-locate its antenna on a nearby tower. Therefore, Plaintiffs forfeited their entitlement to the special exception for telecommunication signal facilities. Furthermore, Plaintiffs were not eligible for the special exception because they failed to "demonstrate that the proposed use would be one which would not generate offensive light which would constitute a nuisance to adjoining property owners." (Ex. 4 at p. 9.)

Plaintiffs filed a complaint on March 2, 2001. Count I asserts a violation of the Telecommunications Act of 1996 ("TCA"), 47 U.S.C. § 332. Count II seeks damages allowable in a 42 U.S.C. § 1983 action plus

a claim for attorney's fees under 42 U.S.C. § 1988. Count III seeks reversal of the Zoning Board's decision based on state law. On March 26, 2001, Defendant filed a motion to dismiss for failure to state a claim as to Count II. By an order dated May 1, 2001, the court denied that motion holding that the TCA does not preclude a cause of action under § 1983.

On August 1, 2001, Plaintiffs filed a motion for partial summary judgment. Plaintiffs argue that summary judgment should be granted in their favor on all issues of liability, saving the issue of damages for trial. On August 9, 2001, Defendant filed a motion for summary judgment, seeking judgment as a matter of law in its favor on all issues.

## II. *Legal Standard*

Federal Rule of Civil Procedure 56 provides that summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." A factual dispute is "material" if it might affect the outcome of the suit under the applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A factual dispute is "genuine" only if there is a sufficient evidentiary basis which would allow a reasonable fact-finder to return a verdict for the non-moving party. *Id.* at 249, 106 S.Ct. 2505. The court must resolve all doubts as to the existence of a genuine issue of material fact in favor of the non-moving party. *Gans v. Mundy*, 762 F.2d 338, 341 (3d Cir.1985).

Once the moving party has shown that there is an absence of evidence to support the claims of the non-moving party, the non-moving party may not simply sit back and rest on the allegations in the complaint; instead, it must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, and designate specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (internal quotations omitted). Summary judgment should be granted where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden at trial." *Id.*

The standards governing the court's consideration of Federal Rule 56(c) cross-motions are the same as those governing motions for summary judgment, although the court must construe the motions independently, viewing the evidence presented by each moving party in the light most favorable to the non-movant. *Raymond Proffitt Found. v. U.S. Envt'l. Protection Agency*, 930 F.Supp. 1088, 1096 (E.D.Pa. 1996).

## III. *Discussion*

Plaintiffs' complaint alleges that Defendant violated the TCA by denying Delaware Valley's application to construct the tower on the Schiazzas' property. Specifically, Plaintiffs allege that Defendant's decision violated the TCA in that: (1) it prohibited the provision of wireless services to Delaware Valley's customers; (2) its decision to deny the applications was not based on substantial evidence; and (3) it unreasonably discriminated among functionally equivalent service providers. Additionally, Plaintiffs contend that they are entitled to damages for violation of the TCA under 42 U.S.C. § 1983. Finally, Plaintiffs contend that the court should reverse the Zoning Board's decision as an appeal of that decision under the Pennsyl-

vania Municipalities Planning Code, 53 Pa. Cons.Stat. Ann. § 11002–A (West 1999).

Defendant moves for summary judgment contending that Plaintiffs have failed to present evidence creating a disputed issue of material fact as to whether Defendant violated the TCA. Defendant further contends that it is not liable under 42 U.S.C. § 1983 because: (1) the TCA does not impose liability under § 1983; (2) Defendant is not a "person" for purposes of § 1983 liability; and (3) Defendant is entitled to quasi-judicial immunity.

The court will first address Defendant's liability under the TCA and then will address the issues presented as to Defendant's liability under § 1983. Finally, the court will discuss Plaintiffs' state law claim. For the reasons stated below, the court will deny Plaintiffs' motion for summary judgment. Additionally, the court will grant Defendant's motion for summary judgment in part and will deny it in part.

### A. Liability under the TCA

#### 1. Did Defendant's Decision Prohibit the Provision of Wireless Services?

"Congress enacted the TCA to provide 'a pro-competitive, de-regulatory national policy framework designed to rapidly accelerate private sector deployment of advanced telecommunications and information technologies and services to all Americans by opening all telecommunications markets to competition.'" *APT Pittsburgh Ltd. P'ship. v. Penn Twp.*, 196 F.3d 469, 473 (3d Cir.1999) (quoting H.R. Conf. Rep. No. 104–458 (1996), reprinted in 1996 U.S.C.C.A.N. 10, 1124). "[S]ection 332(c)(7) of the TCA is a deliberate compromise between two competing aims—to facilitate nationally the growth of wireless telephone service and to maintain substantial local control over siting of towers." *Town of Amherst v. Omnipoint Communications Enters., Inc.*, 173 F.3d 9, 13 (1st Cir.1999).

■ In furtherance of these aims, the TCA imposes several substantive limitations on state and local government regulation of telecommunications facilities. Of importance to the present discussion, the TCA provides that a state or local government, or instrumentality thereof, "shall not prohibit or have the effect of prohibiting the provision of personal wireless services." 47 U.S.C. § 332(c)(7)(B)(i)(II). In accordance with this limitation, local officials must always ensure that neither their general policies, nor their individual opinions, prohibit or have the effect of prohibiting wireless service. *Cellular Tel. v. Zoning Bd. of Adj. of Ho–Ho–Kus*, 197 F.3d 64, 70 (3d Cir.1999). To enforce its limitations on the exercise of state and local authority, the TCA provides a cause of action to challenge adverse decisions by such authorities regarding wireless service facilities. 47 U.S.C. § 332(c)(7)(B)(v); *see also Penn Twp.*, 196 F.3d at 474.

■ Local policies and decisions have the effect of prohibiting wireless service when "they result in 'significant gaps' in the availability of wireless services." *Ho–Ho–Kus*, 197 F.3d at 70. The Third Circuit has held that a significant gap in personal wireless service exists "when a remote user of those services is unable either to connect with the land-based national telephone network, or to maintain a connection capable of supporting a reasonably uninterrupted communication." *Id.; Omnipoint Communications Enters., L.P. v. Newtown Twp.*, 219 F.3d 240, 244 (3d Cir.2000). In making this determination, it is relevant to consider whether the gap in service covers a "small residential cul-de-sac, or whether it straddles a significant commuter highway or commuter railway." *Id.* n. 2. As precursory matters, the provid-

er must demonstrate that: (1) the area the new facility will serve is not already served by another provider; and (2) the proposed plan is the least intrusive means to bridge the gap in wireless service. *Newtown Twp.*, 219 F.3d at 241; *Penn Twp.*, 196 F.3d at 480.

██ When these factors are applied to the case at hand it becomes evident that Plaintiffs are not entitled to summary judgment on the issue of whether Defendant's action had the effect of prohibiting wireless service under the TCA. Plaintiffs have provided evidence that the proposed tower was necessary to fill a significant gap in Delaware Valley's PCS network. However, Plaintiffs have not provided any evidence that this area is not covered by another wireless communications provider. Therefore, even though Plaintiff's provide evidence that if a substantial gap in wireless service exists, the proposed tower would be the least intrusive manner of filling that gap, the court will not hold, as a matter of law, that Defendant prohibited the provision of wireless service.

Defendant argues that the evidence in the record definitively indicates that the gap in question was covered by other wireless communications providers such as Verizon, Sprint, and AT & T. Specifically, Defendant points to Woodmansee's testimony before the Zoning Board. During the course of his testimony, Woodmansee discussed other towers in close proximity to the proposed tower. Yet, nowhere in this testimony does Woodmansee indicate that the gap in Delaware Valley's service is already covered by Verizon, Sprint or AT & T.

There is a genuine issue of material fact regarding whether a significant gap in wireless communication service, as contemplated by the TCA, exists in Fairview Township. Therefore, the court will not hold, as a matter of law, that Plaintiffs'

proposed tower would fill a significant gap and would be the least intrusive means of doing so. Summary judgment is inappropriate, therefore, on the issue of whether Defendant violated the TCA by effectively prohibiting the provision of wireless services. 47 U.S.C. § 332(c)(7)(B)(i)(I).

### 2. Was Defendant's Decision Based on "Substantial Evidence"?

Plaintiffs argue that Defendant's decision violated the TCA because it was not based on substantial evidence. Specifically, Plaintiffs allege that there is no support for the Board's conclusion that the proposed tower would be a principal use or for its conclusion that Plaintiffs are not entitled to the special exception for telecommunications signal facilities.

The TCA requires that "any decision by a State or local government or instrumentality thereof to deny a request to place, construct, or modify personal wireless service facilities shall be in writing and supported by substantial evidence contained in a written record." 47 U.S.C. § 332(c)(7)(B)(iii). Substantial evidence " 'does not mean a large or considerable amount of evidence, but rather such evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Omnipoint Communications Enters., L.P. v. Zoning Bd. of Easttown Twp.*, 248 F.3d 101, 106 (3d Cir.2001) (quoting *Pierce v. Underwood*, 487 U.S. 552, 565, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988) (internal quotations omitted)). A court reviewing a locality's decision under the substantial evidence standard "is not to weigh the evidence contained in that record or substitute its own conclusions for those of the fact finder," but rather must "determine whether there is substantial evidence in the record as a whole to support the challenged decision." *Ho–Ho–Kus,* 197 F.3d at 71; *see also Omnipoint Corp. v. Zoning*

*Hearing Bd. of Pine Grove Twp.* 181 F.3d 403, 408 (3d Cir.1999) (holding that review under the substantial evidence standard requires that the court take into account evidence that is unfavorable to the locality's decision). The substantial evidence test applies to findings under the locality's own zoning requirements. *Pine Grove Twp.*, 181 F.3d at 408.[1]

With these factors in mind, the court examines the reasons that Defendant put forth justifying its conclusion that Plaintiffs were not entitled to the special exception for telecommunications facilities. In its decision, under the heading of "Conclusions of Law," Defendant states that Plaintiffs "did not establish that [they] had made a good faith attempt to locate on the existing telecommunication signal facility in the vicinity of the proposed site as required by the Zoning Ordinance." (Ex. 2 at p. 9.) Under the special exception to the Zoning Ordinance for telecommunications facilities, if a wireless communications provider seeks to erect a telecommunications tower, the provider must make a good faith effort to co-locate its antenna on an existing tower located within a one-fourth (¼) mile radius of the proposed tower. Zoning Ordinance § 1602.12.D(2).

In their application, Plaintiffs included a letter from Verizon rejecting Plaintiffs' offer to co-locate on an existing tower located within a one-fourth (¼) mile radius of the proposed tower site. In the decision, the Zoning Board states that Delaware Valley did not make a good faith effort to co-locate because Verizon's letter stated that Delaware Valley would be unable to co-locate "at the present time." (Ex. 2 at 7 and Ex. 9.) Defendant now contends that this statement is "vague and essentially non-responsive." (Def. Br. in Sup. Mot. Sum J. at 2.) However, the letter spells out, in no uncertain terms, that Verizon would not allow Plaintiffs to co-locate. Even if there were some dispute about the meaning of the letter, the Zoning Ordinance requires only that the provider make a good faith effort to co-locate. It does not require that co-location be achieved.

The Zoning Board's decision also makes reference to alleged discrepancies in the testimony of Plaintiffs' witnesses.[2] Not only does the decision not refer to its own record concerning these findings, but the court's examination of the record before the Zoning Board indicates that there were no inconsistencies. Woodmansee testified that Delaware Valley looked for structures within a one-fourth (¼) mile radius of the proposed tower. (Ex. 1 at 38.) Additionally, Woodmansee indicated that it could not co-locate on towers outside the one-fourth (¼) mile radius because they would not provide the necessary coverage. (*Id.* at 38–39.) Furthermore, both Woodmansee and Tahmas testified that, when possible, co-location is preferred because it costs less in the end.[3] (*Id.* at 38, 134–35.)

---

1. Although neither side contests the issue, the court assumes that the proposed tower is a "personal wireless service facility" as contemplated by the TCA.

2. The Zoning Board's decision states:

 [T]he testimony of the Applicant's witnesses tended to indicate that the Applicant really did not want to co-locate on the existing tower; but preferred the new location. The Applicant's witnesses suggested, in somewhat confusing fashion, that the proposed location and height would be superior to the existing tower, even though the existing tower is erected at a higher elevation.
 (Ex. 2 at 7.)

3. It is also worth noting that contrary to Defendant's assertion, Plaintiffs' antenna on the proposed tower would be located higher than it would have been located on the Verizon tower. According to Tahmas, the Verizon tower is 150 feet tall. Yet, Verizon locates its antenna at the top of that tower and Plaintiffs

These statements are uncontradicted and consistent with Plaintiffs' claim that it pursued co-location opportunities, but none were available.

■ Defendant also asserts that the special exception was unavailable to Plaintiffs because the aviation warning light on top of the tower would constitute a nuisance. In support of this conclusion, Defendant relies upon a single statement by Plaintiffs' landscape architect. When asked whether the light would constitute a nuisance, assuming it was visible from an adjoining property, the witness responded: "Possibly, yes." (Ex. 1 at 106.) This does not qualify as substantial evidence supporting a conclusion that Plaintiffs were not entitled to the special exception. *See Pine Grove Twp.*, 181 F.3d at 409 (quoting *Cellular Tel. Co. v. Town of Oyster Bay*, 166 F.3d 490, 496 (2d Cir.1999) (A "few generalized concerns with 'aesthetics' cannot serve as substantial evidence …")). More to the point, Plaintiffs advanced uncontradicted evidence that the light would be required under regulations of the Federal Aviation Administration ("FAA"). The special exception specifically allows artificial lighting when required by the FAA. (Ex. 1 at pp. 34–35 and Zoning Ordinance § 1602.12.E(9).)

The Zoning Board also claimed that Delaware Valley failed to make out the required showing for the grant of a variance. It concluded that, under the Zoning Ordinance, the proposed tower would consti-

tute a principal use, and only one principal use per lot is permitted. *See* Zoning Ordinance § 2201. According to Defendant, the lot has a principal use as a roller skating rink, so Plaintiffs would need a variance in order to construct the proposed tower. Defendant insists that Plaintiffs failed to meet their burden entitling them to a variance. Plaintiffs, on the hand, argue that the telecommunications tower would be a secondary or accessory use.[4]

The Zoning Ordinance's definition of a principal use makes clear that a use is either a principal use or an accessory use. *Id.* That section also defines an accessory use as: "A use customarily incidental and subordinate to the principal use or building." *Id.* Section 901 of the Zoning Ordinance lists the permitted uses in the Commercial Highway District, and § 902 lists the uses allowed only by special exception. Accessory uses are listed as permitted uses in § 901, while telecommunication signal facilities are listed as a use permitted only by special exception. The Zoning Ordinance, therefore, lists telecommunications facilities and accessory uses as mutually exclusive categories. The parties do not dispute the fact that the property's principal use is a roller skating rink. Because the proposed tower would be an additional principal use, Plaintiffs were required to make a showing that they were entitled to a variance from the one principal use per lot limitation.

---

would not be able to locate its antenna in that spot, even had Verizon allowed co-location. (*Id.* at 134.) Plaintiff's proposed tower would be 150 feet tall. (Pl. Br. in Sup. Mot. Sum. J. at 2 and Def. Br. in Opp. Mot. Sum. J. at 1.)

**4.** Plaintiffs argue, in the alternative, that even if the telecommunications tower is a principal use, the Zoning Board's decision denying the variance was not based on substantial evidence because Plaintiffs offered to subdivide

the property. However, the relevant inquiry is whether the decision to deny the variance was based on substantial evidence. The subdivision question is not material. In any event, the Zoning Board did not have jurisdiction to grant the subdivision. Under 53 Pa. Cons.Stat. Ann. § 10909.1(b)(2), that power is vested exclusively with the Board of Supervisors of Fairview Township, not the Zoning Board.

Under Pennsylvania law, an applicant seeking a variance from a zoning ordinance bears the burden of proving: (1) unnecessary hardship will result if the variance is denied; and (2) the proposed use is not contrary to the public interest. 53 Pa. Cons.Stat. Ann. § 10910.2; *see also City of Pittsburgh v. Zoning Bd. of Adj.*, 522 Pa. 44, 559 A.2d 896, 903 (1989); *Valley View Civic Assoc. v. Zoning Bd. of Adj.*, 501 Pa. 550, 462 A.2d 637, 640 (1983); *Jasy Corp. v. Board of Adj.*, 413 Pa. 563, 198 A.2d 854, 855 (1964); *Beaver Valley Builders Supply, Inc. v. Zoning Hearing Bd. of Bell Acres*, 162 Pa.Cmwlth. 525, 639 A.2d 915, 920 (1994). Likewise, the Zoning Ordinance allows variances only when there is proof of the following: (1) that the property in question possesses unique physical characteristics creating unnecessary hardship by application of the Zoning Ordinance to the property; (2) there is no possibility that the property can be developed in strict conformity with the provisions of the Zoning Ordinance; (3) the unnecessary hardship was not created by the applicant; (4) the proposed variance will not alter the essential character of the district in which the property lies; and (5) the proposed variance is the least modification possible. Zoning Ordinance § 1503.

In support of their bid for a variance, Plaintiffs argued—as they do now in favor of a finding of no substantial evidence—that subdivision would be awkward. Defendant held this insufficient to satisfy Plaintiffs' burden for variance entitlement. Based on the facts before it, including Plaintiffs' own admission that the property could be subdivided, the Zoning Board's holding was based on substantial evidence.

Although, as stated above, the Zoning Board's decision that Plaintiffs were not entitled to the special exception was not supported by substantial evidence, its

holding that Plaintiffs failed to satisfy its burden as to the grant of a variance was supported by substantial evidence. Because granting the special use exception, while denying the variance, would result in a prohibited two-principal uses lot, the Zoning Board's decision to deny Plaintiffs' overall application was based on substantial evidence. The court, therefore, will grant Defendant's motion for summary judgment and deny Plaintiffs' motion as to Plaintiffs' substantial evidence claim.

**3. *Did Defendant Discriminate Between Functionally Equivalent Wireless Communications Providers?***

Even if Defendant's decision to deny Plaintiffs' application was based on substantial evidence and did not result in the prohibition of wireless services, the TCA prohibits discrimination between functionally equivalent providers of wireless communications. *See* 47 U.S.C. § 332(c)(7)(B)(i)(II)(ii). In order to prove discrimination, the provider must make two primary showings. First, it must show that it was discriminated against by the local government agency. Second, it must show that such discrimination was unreasonable. *APT Pittsburgh Ltd. P'ship. v. Lower Yoder Twp.*, 111 F.Supp.2d 664, 674 (W.D.Pa.2000).

To satisfy the first prong of this test, Plaintiffs must demonstrate that providers of functionally equivalent services were treated differently than it was. *See id.* Plaintiffs argue that the Zoning Board granted a variance to Sprint Spectrum, L.P., a functionally equivalent provider of wireless communication services, on November 1, 1999. (Pl.Br.Sup.Mot.Sum. J., Ex. A.) That decision involved a tower in the commercial highway district. The Zoning Board granted Sprint's application for the special use permit, finding that

Sprint had attempted to co-locate in good faith even though the proprietor of the already-existing tower did not respond to Sprint's request. (*Id.* at 5.) In stark contrast to the reasoning of its holding as to Plaintiffs' application, the Zoning Board in approving Sprint's application for a variance to the principal use stating: "Because the Board finds that the use is both substantiated and appropriate and that subdivision would be impracticable, if not impossible, the variance will be granted." (*Id.*) Additionally, there is evidence that Defendant has granted five special use exceptions and variances for construction of telecommunications towers in the period between August 1997 and July 2000. (Ex. 13.) Plaintiffs have provided uncontested evidence showing that they were treated differently than other functionally equivalent providers. *Cf. Lower Yoder Twp.,* 111 F.Supp.2d at 674 (holding that Defendant was entitled to summary judgment where Plaintiff failed to demonstrate that it was treated differently with respect to the erection of a telecommunications tower in a specific zoning district).

However, Plaintiffs must also show that the discrimination was unreasonable by demonstrating that " 'the structure, placement or cumulative impact' of the existing facilities make them more intrusive than the proposed facility." *Id.* (quoting *Penn Twp.,* 196 F.3d at 480 n. 7); *Sprint Spectrum, L.P. v. Willoth,* 176 F.3d 630, 643 (2d Cir.1999) ("[I]t is not unreasonably discriminatory to deny a subsequent application for a cell site that is substantially more intrusive than existing cell sites by virtue of structure, placement or cumulative impact."). Plaintiffs have provided evidence showing that the tower is the minimum height necessary to complete its network coverage. However, whether the existing facilities in the Commercial Highway District are more intru-

sive than Plaintiffs' proposed tower is a question of fact to which both parties present very little evidence. The court knows, from the record before it, that there are at least two existing telecommunications towers in the Commercial Highway district and one, the Verizon tower, is at least as tall as Plaintiffs' proposed tower. It remains to be seen whether the existing towers are substantially more intrusive than Plaintiffs' proposed tower. Plaintiffs, therefore, are not entitled to summary judgment on this issue.

Defendant, likewise, has failed to demonstrate facts entitling it to summary judgment on the unreasonable discrimination claim. Defendant advances no argument on this issue in its brief in support of its motion for summary judgment. Additionally, in its response brief to Plaintiffs' motion, Defendant argues that it did not unreasonably discriminate between functionally equivalent providers because its decision did not have the effect of prohibiting the provision of wireless services. These are completely independent inquires under the TCA.

Because there is a genuine issue of material fact concerning whether Defendant unreasonably discriminated between functionally equivalent providers of wireless services, the court will deny Plaintiffs' motion for summary judgment on the issue. Although Defendant does not argue this issue in their motion for summary judgment, in so far as it seeks summary judgment in its favor on all TCA issues, that motion will be denied.

**B. Section 1983 Claim**

With respect to Plaintiffs' claim under 42 U.S.C. § 1983, Defendant argues that it is entitled to summary judgment even if it violated the TCA. Defendant asserts three grounds in support of this contention: (1) the TCA cuts off Defendant's liability un-

der § 1983; (2) Defendant is not a "person" for purposes of § 1983 liability; and (3) Defendant is entitled to quasi-judicial immunity.

### 1. Did the Enactment of the TCA Cut Off Recovery under Section 1983

In an order dated May 1, 2001, the court denied Defendant's motion to dismiss Count II of Plaintiffs' complaint. Defendant argued that the TCA foreclosed relief under § 1983. The court denied the motion holding that the TCA does not preclude Plaintiffs' action under § 1983. That holding became the law of the case, and, absent unusual circumstances, the court will not readdress the issue here. *See Zichy v. City of Philadelphia,* 590 F.2d 503, 508 (3d Cir.1979).

### 2. Is the Zoning Board a "Person" for purposes of imposing Liability under § 1983

■ To prevail in an action under 42 U.S.C. § 1983, a plaintiff must demonstrate: (1) violation of a right secured by the Constitution and the laws of the United States; and (2) that the alleged deprivation was committed by a person acting under color of state law. *Nicini v. Morra,* 212 F.3d 798, 806 (3d Cir.2000); *Moore v. Tartler,* 986 F.2d 682, 685 (3d Cir.1993). Defendant asserts that summary judgment should be issued in its favor on Count II because Defendant is not a "person" for purposes of § 1983 liability. Specifically, Defendant contends that while municipal corporations are "persons" under § 1983, the Zoning Board is not a municipal corporation. Rather, the Zoning Board is a quasi-judicial entity created by the Fairview Township municipal corporation. Furthermore, Defendant argues, even if the Zoning Board is a "person" for purposes of § 1983, the Zoning Board was not acting pursuant to a municipal policy and,

therefore, can not be held liable under § 1983.

In *Monell v. Dept. of Soc. Serv.,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), the Supreme Court held that municipalities may be held liable under § 1983 where the action allegedly violating a federal right "implements or executes a policy statement, ordinance, or officially adopted policy." *Id.* at 690, 98 S.Ct. 2018. In *Pembaur v. Cincinnati,* 475 U.S. 469, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986), the Supreme Court clarified its holding in *Monell* stating that the gravamen of the official municipal policy requirement is based in the rejection of *respondeat superior* liability in § 1983 actions. It does not require a series of decisions or practices. Instead:

> The "official policy" requirement was intended to distinguish the acts of the *municipality* from the acts of the *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible. . . . With this understanding, it is plain that municipal liability may be imposed for a single decision by municipal policymakers under appropriate circumstances.

■ *Id.* at 479–80, 106 S.Ct. 1292 (emphasis in original). As in the instant matter, when liability is premised on a single action, whether the municipality may be held liable depends upon the nature of the decision and the body making it. *Id.* at 481, 106 S.Ct. 1292 ("Municipal liability attaches only where the decisionmaker possesses final authority to establish municipal policy."). Defendant argues that the Zoning Board is not a municipal corporation and, therefore, has no authority to establish municipal policy. However, Defendant fails to recognize that Fairview Township has delegated such authority to Defendant. *See id.* at 483, 106 S.Ct. 1292. Although Defendant contends otherwise,

this is not an all or nothing analysis. The Zoning Board need not have final power to establish all policies in Fairview Township in order to be liable under § 1983 for zoning policies. Instead, the Zoning Board's liability turns on whether they are "final policymakers for the local government in a particular area, or on a particular issue." *McMillian v. Monroe County*, 520 U.S. 781, 785, 117 S.Ct. 1734, 138 L.Ed.2d 1 (1997) (citing *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737, 109 S.Ct. 2702, 105 L.Ed.2d 598 (1989)). Whether an official has final policymaking authority is a question of state law. *Pembaur*, 475 U.S. at 481, 106 S.Ct. 1292; *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988). "In looking to state law, a court must determine which official has final, unreviewable discretion to make a decision or take an action." *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1481 (3d Cir.1990). Additionally, the identification of policymakers is solely a question of law. *Jett*, 491 U.S. at 737, 109 S.Ct. 2702.

 Under Pennsylvania law, every municipality that enacts a zoning ordinance must also create a zoning hearing board. 53 Pa. Cons.Stat. Ann. § 10901. Once empaneled, the Zoning Board has exclusive jurisdiction to hear and render final adjudications in applications for variances and special exceptions. 53 Pa. Cons. Stat. Ann. § 10909.1(a)(5) and (6). Although the Zoning Board did not have the power to enact the Zoning Ordinance, a clear-cut manifestation of Fairview Township's zoning policy, authority to make final policy may be shared among more than one official or body. *See Praprotnik*, 485 U.S. at 126, 108 S.Ct. 915. Under these facts, the Zoning Board has final authority, pursuant to state law, to establish municipal zoning policy in Fairview Township, at least as far the granting or denying of

variances or special exceptions are concerned. Thus, the Zoning Board's decisions in these areas constitute municipal policy for purposes of § 1983. *See Loreto Dev. Co., Inc. v. Village of Chardon*, Nos. 97–3502/97–3656, 1998 WL 320981, at *3, 1998 U.S.App. LEXIS 12183, at *7 (6th Cir. June 4, 1998) (holding that a municipality may be held liable for actions of its zoning board because the municipality delegated its final policymaking authority).

### 3. *Is the Zoning Board entitled to Quasi–Judicial Immunity?*

Defendants argue that the Zoning Board is a quasi-judicial entity entitled to absolute immunity from liability under § 1983. In response, Plaintiff argues that their suit names the Zoning Board in its official capacity, and, as such, no immunity applies.

 The proponent of a claim to absolute immunity in a § 1983 action bears the burden of establishing the justification for such immunity. *Antoine v. Byers & Anderson*, 508 U.S. 429, 432, 113 S.Ct. 2167, 124 L.Ed.2d 391 (1993) (quoting *Burns v. Reed*, 500 U.S. 478, 486–87, 111 S.Ct. 1934, 114 L.Ed.2d 547 (1991)). Judicial immunity is "an absolute immunity from all claims relating to the exercise of judicial functions." *Id.* at 433 n. 8, 113 S.Ct. 2167. The Supreme Court has extended the concept of judicial immunity in the context of § 1983 actions to officials who are not judges, in the traditional sense, but perform tasks similar to those of a judge. This type of immunity is frequently referred to as "quasi-judicial immunity." The Supreme Court, in evaluating whether an official warrants coverage under quasi-judicial immunity from § 1983 liability, has stated that:

> [T]he "touchstone" for the doctrine's applicability has been "performance of the function of resolving disputes between parties, or of authoritatively adjudicat-

ing private rights." When judicial immunity is extended to officials other than judges, its is because their judgments are "functional[ly] comparab[le]" to those of judges—that is, because they, too, "exercise a discretionary judgment as a part of their function."

 *Antoine,* 508 U.S. at 435–36, 113 S.Ct. 2167 (citations omitted). Defendant cites a litany of Pennsylvania law in support of its argument that the Zoning Board is a quasi-judicial entity for purposes of § 1983 immunity. However, it is well settled that in actions brought pursuant § 1983, immunity defenses are determined according to federal law. *Howlett v. Rose,* 496 U.S. 356, 110 S.Ct. 2430, 110 L.Ed.2d 332 (1990). In any event, even if the court were to find that the powers delegated to municipal zoning boards under Pennsylvania law determined the quasi-judicial character of zoning boards, that finding would entitle the individual members of the Zoning Board to immunity. However, when a zoning board itself is sued, it is sued in its official capacity and is entitled to no immunity whatsoever. *Bass v. Attardi,* 868 F.2d 45, 51 (1989); *Jodeco, Inc. v. Hann,* 674 F.Supp. 488, 499 (D.N.J. 1987); *see also Hafer v. Melo,* 502 U.S. 21, 25, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991) ("[T]he only immunities available to the defendant in an official-capacity action are those that the governmental entity possesses."); *Owen v. City of Independence,* 445 U.S. 622, 657, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980) (holding that municipalities have no immunity from § 1983 suits); *Aitchison v. Raffiani,* 708 F.2d 96, 100 (3d Cir.1983) (absolute immunity of individual defendants does not preclude liability of municipality). Of course, in official-capacity suits, because the governmental entity is the real party, the plaintiff must show that the entity's policy or custom played a part in the violation of federal law. *Kentucky v. Graham,* 473 U.S.

159, 166, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985). As discussed above, *supra* Part III.B.2, Defendant's policy is alleged to have caused violation of the TCA, a federal statute.

Defendant is not entitled to absolute quasi-judicial immunity. Therefore, the court will deny Defendant's motion for summary judgment as to Count II of Plaintiffs' complaint.

### C. *State Law Claim*

Plaintiffs argue that they are entitled to summary judgment as to Count III because Defendant's decision to deny the application was not based on substantial evidence. Thus, Defendant abused its discretion and this court should reverse the Zoning Board's determination. However, as discussed in *supra* Part III.A.2, Defendant's decision was based on substantial evidence. Summary judgment will be granted in favor of Defendant as to Count III.

### IV. *Conclusion*

In accordance with the foregoing discussion, the court finds that Plaintiffs' motion for summary judgment should be denied. Additionally, the court finds that Defendant's motion for summary judgment should be granted as to Count III, and as to Plaintiffs' claim in Count I based on 47 U.S.C. § 332(c)(7)(B)(iii). However, Defendant's motion for summary judgment is denied as to Count II and Plaintiffs' remaining claims in Count I under 47 U.S.C. § 332(c)(7)(B)(i)(I) and (II). An appropriate order will issue.