**CITIZENS FOR PENNSYLVANIA'S FUTURE, a non-profit corporation, Plaintiff,**

v.

**UNITED STATES DEPARTMENT OF THE INTERIOR, Defendant.**

No. CIV.A. 1:CV–01–2403.

United States District Court, M.D. Pennsylvania.

Aug. 27, 2003.

Kurt J. Weist, Penn Furniture, Harrisburg, PA, for Citizens For Pennsylvania's Future, a non-profit corporation, Plaintiff.

Anne K. Fiorenza, Office of the United States Trustee, U.S. Attorney's Office, Harrisburg, PA, for United States Department of the Interior, Defendant.

*MEMORANDUM*

CONNER, District Judge.

Presently before the court are the parties' cross motions for summary judgment. (Docs. 21 & 30). This is an action for judicial review of the United States Department of the Interior's ("Interior") denial of plaintiff Citizens for Pennsylvania's Future's ("PennFuture") request for documents under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552.[1] The parties have fully briefed the issues, and the motions are now ripe for disposition.

## I. *Factual Background*

PennFuture is a non-profit corporation organized under the laws of the Commonwealth of Pennsylvania. (Doc. 1, ¶ 4). PennFuture asserts an interest in the operations of Interior's Office of Surface Mining Reclamation and Enforcement ("OSM"), and specifically in OSM's oversight of the Commonwealth of Pennsylvania's implementation of a reclamation bonding program under the Surface Mining Control and Reclamation Act ("SMCRA"), 30 U.S.C. §§ 1201–1328. (Doc. 1, ¶ 4). Interior is the agency of the United States government with responsibility for administering and enforcing the SMCRA. *Id.* at ¶ 5. Interior possesses the records to which PennFuture seeks access. *Id.*

On January 29, 2001, PennFuture filed a letter requesting disclosure of certain records with the Harrisburg, Pennsylvania Field Office of OSM. *Id.* at ¶ 6. By letter dated February 23, 2001, PennFuture modified its initial request. *Id.* at ¶ 7. On June 29, 2001, OSM partially denied PennFuture's FOIA request. *Id.* at ¶ 8. Defendant refused to disclose fourteen documents or categories of documents citing FOIA exemption number five, 5 U.S.C. § 552(b)(5). *Id.* at ¶ 8.

On July 27, 2001, PennFuture filed an administrative appeal from defendant's denial with Interior's FOIA Appeals Officer. *Id.* at ¶ 9. By letter dated August 24, 2001, Interior notified PennFuture that it would "make every effort to provide you with a determination on this issue of your appeal as soon as possible." *Id.* at ¶ 10. The letter further stated that PennFuture had the right to treat Interior's delay in resolving the appeal as a final denial of the appeal. Accordingly, Interior instructed plaintiff that it was entitled to seek judicial review of the final denial in an appropriate United States district court. *Id.* Plaintiff filed the instant complaint on December 19, 2001. (Doc. 1).[2]

In support of its motion for summary judgment (Doc. 21), Interior produced the affidavits of Robert McKenzie and Edward Keable. (*See* Doc. 27). Attached to Mr. Keable's affidavit, and therein incorporated by reference, is defendant's *Vaughn*[3] index, which describes the requested documents and Interior's basis for withholding each document.

Interior refers to the requested records as document groups B–1 through B–14.[4] Each of the requested documents relates to defendant's preparation for, and involvement in, *Pennsylvania Federation of Sportmen's Clubs v. Seif,* Civil Action No. 1:CV–99–1791 (M.D.Pa.). Interior and the Pennsylvania Department of Environmental Protection ("Environmental Protection") are co-defendants in the *Sportsmen's Clubs* litigation, and PennFuture is lead counsel for the *Sportsmen's Clubs* plaintiffs.

Group B–1 consists of a draft letter from United States Department of Justice attorney Ruth Ann Storey to Pennsylvania Department of Environmental Protection attorney Michael Heilman with an attached draft letter from former OSM field director Robert Biggi. *See Vaughn* index (Doc. 27). Document groups B–2 through B–4, and B–6 are

---

1. In the complaint, plaintiff also seeks relief under the Administrative Procedures Act, 5 U.S.C. §§ 701 *et seq.,* ordering Interior to resolve PennFuture's pending administrative appeals. *See* Complaint, Count II (Doc. 1). Because this memorandum and order resolves the issues presented under FOIA, this claim is moot. The court will grant defendant's motion for summary judgment on Count II of the complaint.

2. By order dated August 15, 2002, Judge Sylvia H. Rambo transferred this case to the undersigned. (Doc. 13).

3. *Vaughn v. Rosen,* 484 F.2d 820 (D.C.Cir.1973).

4. Interior released groups B–5 and B–14 to PennFuture prior to filing its motion for summary judgment.

drafts of Ms. Storey and Mr. Biggi's letters in B–1. *Id.*

In preparation for the *Sportsmen's Clubs* litigation, Environmental Protection informed Mr. Biggi of its position in relation to the pending lawsuit. Mr. Biggi, in turn, prepared draft analysis reports in which he explained Environmental Protection's position to his supervisors. These draft reports comprise groups B–7 through B–10. *Id.* Group B–11 is a "four-page-briefing paper prepared by Mr. Biggi articulating the background issues that he thought should be discussed in a litigation strategy session scheduled for April 4, 2002." *Vaughn* index, pg. 6. Mr. Biggi provided this document to his superiors in order to advise them of Mr. Biggi's suggested strategy for the meeting. Group B–12 is Interior and Environmental Protection's agenda for their April 4, 2002 joint-strategy meeting. *Id.* at 7.

Document group B–13 includes two-and-a-quarter pages of Mr. Biggi's notes concerning Environmental Protection's proposed conversion to full cost bonding. B–13 also includes an inserted, typed comment from Interior attorney Mr. Barcley. *Id.* at 7.

## II. *Legal Standard for Summary Judgment*

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). *See also Saldana v. Kmart Corp.*, 260 F.3d 228, 231–32 (3d Cir.2001). A fact that will affect the outcome of the case under the governing law is "material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "In determining whether an issue of material fact exists, the court must consider all evidence in the light most favorable to the non-moving party." *Reeder v. Sybron Transition Corp.*, 142 F.R.D. 607, 609 (M.D.Pa.1992) (citing *White v. Westinghouse Electric Company*, 862 F.2d 56, 59 (3d Cir.1988)). *See also Saldana*, 260 F.3d at 232.

At the summary judgment stage, a judge does not weigh the evidence for the truth of the matter, but simply determines "whether there is a genuine issue for trial." *Schnall v. Amboy Nat. Bank*, 279 F.3d 205, 209 (3d Cir.2002) (citing *Anderson*, 477 U.S. at 249, 106 S.Ct. 2505). An issue of material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

"Once the moving party has shown that there is an absence of evidence to support the claims of the non-moving party, the non-moving party may not simply sit back and rest on the allegations in the complaint; instead, it must 'go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, and designate specific facts showing that there is a genuine issue for trial.'" *Schiazza v. Zoning Hearing Bd., Fairview Tp., York County, Pennsylvania*, 168 F.Supp.2d 361, 365 (M.D.Pa.2001) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). *See also Saldana*, 260 F.3d at 232. Summary judgment should be granted when a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322–23, 106 S.Ct. 2548.

The same standard applies when the court is considering cross-motions for summary judgment. However, "the court must construe the motions independently, viewing the evidence presented by each moving party in the light most favorable to the non-movant." *Schiazza*, 168 F.Supp.2d at 365.

## III. *Discussion*

Upon request pursuant to the Freedom of Information Act, federal agencies must disclose their records to members of the public, *see* 5 U.S.C. § 552(a), unless one of the Act's nine disclosure exemptions applies. *See* 5 U.S.C. § 552(b). "The Freedom of Information Act mandates a policy of broad disclosure of government documents when production is properly requested." *Lame v. U.S. Dept. of Justice*, 767 F.2d 66, 68 (3d Cir. 1985). Accordingly, "[FOIA's] exemptions

have been consistently given a narrow compass." *U.S. Dept. of Justice v. Tax Analysts,* 492 U.S. 136, 151, 109 S.Ct. 2841, 106 L.Ed.2d 112 (1989) (citations omitted). *See also Conoco Inc. v. U.S. Dept. of Justice,* 687 F.2d 724, 728 (3d Cir.1982).

In order to withhold documents under Section 552(b), the agency must produce a *Vaughn* index, which provides "a relatively detailed justification, specifically identifying the reasons why a particular exemption is relevant and correlating those claims with the particular part of a withheld document to which they apply." *Davin v. U.S. Dept. of Justice,* 60 F.3d 1043, 1050 (3d Cir.1995) (quoting *McDonnell v. United States,* 4 F.3d 1227, 1241 (3d Cir.1993)). In a FOIA case, the agency is entitled to summary judgment when its *Vaughn* index and other affidavits:

> describe the withheld information and the justification for withholding with reasonable specificity, demonstrating a logical connection between the information and the claimed exemption ..., and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith.

*Davin v. U.S. Dept. of Justice,* 60 F.3d 1043, 1050 (3d Cir.1995) (citations omitted).

Defendant designates the declaration of Edward T. Keable as its *Vaughn* index in this case. (*See* Doc. 27). In addition to Mr. Keable's affidavit, defendant presents the affidavit of Robert McKenzie, Chief of Pennsylvania's Branch Office of Surface Mining and Reclamation. PennFuture asserts entitlement to summary judgment because Messrs. Keable and McKenzie's affidavits rely on hearsay in violation of Rule 56(e) of the Federal Rules of Civil Procedure. However, the court finds that the affidavits are adequate to survive summary judgment.

All information in Mr. McKenzie's affidavit is based on his own personal knowledge and information furnished him in his official capacity. Mr. McKenzie asserts FOIA exemption number five because "release of the withheld information would stifle the flow of honest and objective opinion that is neces-

sary for the development of good policy." McKenzie Affidavit, ¶ 4 (Doc. 27). The court finds Mr. McKenzie's explanation sufficient to fulfill defendant's burden of putting plaintiff on notice of the claimed reasons for withholding under exemption five.

■ Within the *Vaughn* index, defendant styles the challenged records as document requests B–1 through B–4, and B–7 through B–13.[5] As to each of these document groups, defendant asserts FOIA exemption number five. *See* 5 U.S.C. § 552(b)(5). Under this exemption, agencies need not disclose "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency ...." 5 U.S.C. § 552(b)(5). To qualify for withholding under this exemption,

> a document must satisfy two conditions: ■ its source must be a Government agency, and [2] it must fall within the ambit of a privilege against discovery under judicial standards that would govern litigation against the agency that holds it.

*Dept. of the Interior v. Klamath Water Users Protective Association,* 532 U.S. 1, 8, 121 S.Ct. 1060, 149 L.Ed.2d 87 (2001) (*"Klamath"*).

### A. Inter–Agency or Intra–Agency Memoranda

■ The first requirement for exemption under Section 552(b)(5) is that the documents constitute "inter-agency or intra-agency" memoranda. 5 U.S.C. § 552(b)(5). "Agency" means "each authority of the Government of the United States," 5 U.S.C. § 551(1), and "includes any executive department, military department, Government corporation, Government controlled corporation, or other establishment in the executive branch of the Government ..., or any independent regulatory agency" 5 U.S.C. § 552(f). The relevant agencies here are the Department of the Interior and the Department of Justice.

"[T]he most natural meaning of the phrase 'intra-agency memorandum' is a memoran-

---

**5.** Defendant released to plaintiff document requests B–5 and B–14 prior to producing the index. (Doc. 27).

dum that is addressed both to and from employees of a single agency." *Klamath,* 532 U.S. at 9, 121 S.Ct. 1060 (quoting *Dept. of Justice v. Julian,* 486 U.S. 1, 18 n. 1, 108 S.Ct. 1606, 100 L.Ed.2d 1 (1988)) (Justice Scalia, dissenting). In addition, documents authored by a non-agency actor may constitute intra-agency memoranda if the non-agency actor produced the documents as a disinterested consultant for the federal agency. *Hoover v. U.S. Dept. of Interior,* 611 F.2d 1132, 1137–38 (5th Cir.1980); *Lead Industries Association v. OSHA,* 610 F.2d 70, 83 (2d Cir.1979). However, documents drafted by, or delivered to, non-agency actors other than disinterested consultants fall outside of Section 552(b)(5)'s disclosure exemption. *See Klamath,* 532 U.S. at 12, 121 S.Ct. 1060 (intra-agency exemption inapplicable to correspondence with Indian Tribes, which "necessarily communicate with the Bureau [of Indian Affairs] with their own, albeit entirely legitimate, interests in mind."); *U.S. v. Illinois Fair Plan Association,* 67 F.R.D. 659, 661 (N.D.Ill.1975) (letter from Small Business Administration to a bank is not an intra-agency memorandum).

According to the *Vaughn* index, Department of Justice attorney Ruth Ann Storey and former Interior field director Robert Biggi drafted documents B–1 and B–2. Ms. Storey addressed these draft letters to attorney Michael Heilman of the Pennsylvania Department of Environmental Protection. Environmental Protection is Interior's co-defendant in the *Sportsmen's Clubs* litigation.[6] Although the *Vaughn* index lists B–1 and B–2 as draft letters, Interior eventually delivered these documents to Environmental Protection. Document group B–12 consists of the agenda for an April 4, 2000 meeting between Interior and Environmental Protection's staff and attorneys. Interior shared this document with Environmental Protection during the April 4, 2000 meeting. Environmental Protection is an agency of the Commonwealth of Pennsylvania; hence, the court must determine whether documents which Interior shares with Environmental Protection qualify as inter-agency or intra-

agency memoranda under 5 U.S.C. § 552(b)(5). I believe that they do.

The unique facts of this case warrant application of 5 U.S.C. § 552(b)(5) to memoranda or missives between Environmental Protection and Interior. Under the SMCRA, Interior and Environmental Protection pursue common objectives concerning surface mining. The SMCRA delineates the contours of the two agencies' interests. *See* 30 U.S.C. §§ 1201 *et seq.* The SMCRA mandates that Interior and the states work together in a "cooperative effort . . . to prevent or mitigate adverse environmental effects of present and future surface coal mining operations." 30 U.S.C. § 1201(k). *See also* 30 U.S.C. § 1211(c)(12). The statute further delegates to the state "the primary governmental responsibility for developing, authorizing, issuing, and enforcing regulations for surface mining and reclamation operations subject to this chapter . . . ." 30 U.S.C. § 1201(f). The SMCRA, in turn, requires Interior to assist Environmental Protection "in developing and implementing a program to achieve the purposes of this chapter . . . ." 30 U.S.C. § 1202(g). *See also* 30 U.S.C. §§ 1211, 1254. Hence, the court finds that Interior and Environmental Protection share a unity of interest regarding coal mining reclamation under the SMCRA.

The *Sportsmen's Clubs* litigation directly challenges Interior and Environmental Protection's conduct in furtherance of the SMCRA. Specifically, the *Sportsmen's Clubs'* plaintiffs filed suit against Interior, OSM, and Environmental Protection to enforce the SMCRA provisions relating to the reclamation bonding program under Pennsylvania's approved program for regulating coal mines. *Sportsmen's Clubs* (Doc. 1, ¶ 2). The gravamen of the *Sportsmen's Clubs* litigation is that Interior and Environmental Protection failed to develop and implement the Pennsylvania state program in compliance with the SMCRA. In defending the lawsuit, the *Sportsmen's Clubs* defendants do not represent their own diverse interests; rather, the SMCRA requires that each carry out

---

**6.** *Pennsylvania Federation of Sportsmen's Clubs* is currently pending before the Honorable Sylvia   H. Rambo.

the objectives of the Act. Under these circumstances, the court finds that Environmental Protection employees with whom Interior shared documents B–1, B–2, and B–12 "function[ ] just as an [Interior] employee would be expected to do." *Klamath,* 532 U.S. at 11, 121 S.Ct. 1060. Accordingly, documents B–1, B–2, and B–12 constitute intra-agency documents despite the fact that Interior shared the documents with Environmental Protection.

■ Documents such as those included in groups B–3, B–4, B–6, B–7, B–8, B–9, B–10, B–11, and B–13, which an agency employee creates and shares only with other agency employees or employees of another federal agency, are clearly intra-agency or interagency documents under 5 U.S.C. § 552(b)(5). Hence, the court concludes that document groups B–3, B–4, B–6, B–7, B–8, B–9, B–10, B–11, and B–13 are inter-agency or intra-agency documents. According to the *Vaughn* index, B–3, B–4, and B–6 are early drafts of the B–1 documents. Each of these documents was kept wholly within Interior or was shared only with attorneys at the U.S. Department of Justice.

■ The *Vaughn* index describes B–7 through B–10 as Interior employee Robert Biggi's draft analysis papers evaluating Environmental Protection's letter dated April 18, 2000. In that letter, Environmental Protection explained "its conceptual approach for addressing the concerns raised by the *PFSC* plaintiffs in their litigation." *Vaughn* index at pg. 4 (description of B–7). Mr. Biggi "prepared [these] documents to forward to his superior who was the principle [sic] agency contact with the lawyers who were working on the [*Sportsmen's Clubs*] case." *Id.* at 5 (Basis for Withholding group B–8). These documents were never shared with anyone outside of Interior or the U.S. Department of Justice. Unaddressed documents within an agency's files qualify as intra-agency memoranda for purposes of Section 552(b)(5). *Conoco Inc. v. U.S. Dept. of Justice,* 687 F.2d 724, 728 (3d Cir.1982).

Document group B–11 is a four-page-briefing paper which Mr. Biggi prepared in anticipation of Interior's April 4, 2000 meeting with Environmental Protection. Mr. Biggi prepared this paper in order to inform his superiors as to the pertinent issues for discussion at the April 4, 2000 meeting.

Finally, group B–13 consists of Mr. Biggi and Steven Barcley's notes on Environmental Protection's proposal to convert to "full cost bonding." *Vaughn* index, pg. 7 (Description of B–13). According to the *Vaughn* index, Mr Biggi created this document to provide his superiors and lawyers "with selective factual information and Mr. Biggi's opinion on the subject of [Environmental Protection's] proposed conversion to full cost bonding . . . ." *Id.* (Basis for Withholding B–13).

Under the standard set forth in *Davin,* the court concludes that the *Vaughn* index adequately describes groups B–1, B–2, B–3, B–4, B–6, B–7, B–8, B–9, B–10, B–11, B–12, and B–13 as inter-agency or intra-agency memoranda. *See Davin,* 60 F.3d at 1050. Hence, the court will evaluate whether each of these document groups is privileged from discovery in civil litigation with Interior.

### B. *Privilege from Civil Discovery*

As to each of the document groups, defendant asserts the deliberative process privilege. In addition, defendant contends that the attorney-client privilege protects document groups B–7, B–9, B–11, and B–13.

■ "Exemption (b)(5) shields from the mandatory disclosure requirements of the FOIA the deliberative process that precedes most decisions of government agencies." *Russell v. Dept. of the Air Force,* 682 F.2d 1045, 1047 (D.C.Cir.1982) (citing *Jordan v. U.S. Dept. of Justice,* 591 F.2d 753, 773 (D.C.Cir.1978)). The deliberative process privilege "rests most fundamentally on the belief that were agencies forced to 'operate in a fishbowl' . . . the frank exchange of ideas and opinions would cease and quality of administrative decisions would consequently suffer." *Dudman v. Dept. of the Air Force,* 815 F.2d 1565, 1567 (D.C.Cir.1987) (citation omitted).

■ The United States Supreme Court has determined that under the deliberative process privilege, agencies must disclose "all 'opinions and interpretations' which embody

the agency's effective law and policy," *NLRB v. Sears. Roebuck & Co.*, 421 U.S. 132, 153, 95 S.Ct. 1504, 44 L.Ed.2d 29 (1975), but may withhold disclosure of "all papers which reflect the agency's group thinking in the process of working out its policy and determining what its law shall be." *Id.* (citation omitted). As aptly stated by the U.S. Court of Appeals for the District of Columbia Circuit:

> the exemption protects not only communications which are themselves deliberative in nature, but all communications which, if revealed, would expose to public view the deliberative process of an agency. *Montrose Chemical Corp. of California v. Train*, 491 F.2d 63 (D.C.Cir.1974). For example, agency communications containing purely factual material are generally not protected by Exemption (b)(5). *EPA v. Mink*, 410 U.S. 73, 90–91, 93 S.Ct. 827, 35 L.Ed.2d 119 (1972). Where, however, disclosure of even purely factual material would reveal an agency's decision-making process Exemption (b)(5) applies. *Mead Data Central, Inc. v. U.S. Department of the Air Force*, 566 F.2d 242, 256 (D.C.Cir. 1977).

*Russell*, 682 F.2d at 1048.

■ The court finds that the deliberative process privilege protects document groups B–1, B–2, B–3, B–4, B–6, B–7, B–8, B–9, B–10, B–11, B–12, and B–13 from disclosure. The *Vaughn* index describes these documents as preliminary notes and pre-decisional draft letters and reports. Defendant's description of the challenged documents is sufficient to convince the court that disclosure could "stifle the flow of honest and objective opinion that is necessary for the development of good policy," or "confuse the public by revealing opinions that may not have been adopted by the agency." McKenzie Affidavit, ¶ 4 (Doc. 27). Furthermore, the record lacks evidence to contradict defendant's assertion of the deliberative process privilege or demonstrating bad faith on defendant's part.[7] *Davin*, 60 F.3d at 1050.

Accordingly, the court finds that Section 552(b)(5) protects document groups B–1, B–2, B–3, B–4, B–6, B–7, B–8, B–9, B–10, B–11, B–12, and B–13 from disclosure.[8]

Although document groups B–1, B–2, B–3, B–4, B–6, B–7, B–8, B–9, B–10, B–11, B–12, and B–13 are *generally* exempt from disclosure under Section 552(b)(5), FOIA requires that "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt under this subsection." 5 U.S.C. § 552(b). *See also* 43 C.F.R. § 2.13(e). "It is the agency's burden to prove that the withheld portions are not segregable from the non-exempt material." *Davin*, 60 F.3d at 1052 (citing 5 U.S.C. § 552(a)(4)(B)).

The purpose of a *Vaughn* index is to enable the requesting party and the court to determine easily whether defendant properly withheld the requested documents. Defendant's affidavits failed to discuss whether the challenged documents contain segregable non-exempt information. "Without some further elaboration of the document's contents, [PennFuture] is unable to dispute [Interior's] assertion that more information is not segregable." *Davin*, 60 F.3d at 1052 (citing *Church of Scientology Int'l v. United States Dep't of Justice*, 30 F.3d 224, 232 n. 11 (1st Cir.1994)).

The court will grant defendant's motion for summary judgment in part, and deny plaintiff's motion for summary judgment in part. The court will further direct the defendant to produce documents B–1, B–2, B–3, B–4, B–6, B–7, B–8, B–9, B–10, B–11, B–12, and B–13 for *in camera* review and to produce a supplemental *Vaughn* index discussing, in detail, the issue of possible redaction. Upon completion of its *in camera* review, the court will determine whether Interior will be required to disclose any portions of the challenged documents.

An appropriate order will issue.

---

7. Contrary to PennFuture's assertion, evidence that Interior previously released different documents which reveal its decisionmaking process is irrelevant.

8. Because the deliberative process privilege protects the challenged documents from disclosure, the court will not discuss defendant's attorney-client privilege argument.

### ORDER

AND NOW, this 27th day of August, 2003, in accordance with the foregoing memorandum, it is hereby ORDERED that defendant's motion for summary judgment (Doc. 21) is GRANTED in part and plaintiff's motion for summary judgment (Doc. 30) is DENIED in part. It is further ORDERED that:

(1) Defendant is directed to submit document groups B–1, B–2, B–3, B–4, B–6, B–7, B–8, B–9, B–10, B–11, B–12, and B–13 to the court for *in camera* review;

(2) Defendant is directed to submit a supplemental *Vaughn* index addressing the issue of whether any of the material in document groups B–1, B–2, B–3, B–4, B–6, B–7, B–8, B–9, B–10, B–11, B–12, and B–13 are "reasonably segregable"; and

(3) Determination of the issue of possible redaction is deferred pending *in camera* review.

